STOKER, Judge.
Ashy Enterprises appeals a judgment awarding worker’s compensation benefits to its former employee, Louis C. Matte. Ashy argues that the trial court erred in finding that it was an on-the-job injury, rather than a pre-exisiting condition, that caused Matte’s total and permanent disability.
FACTS
Most of the facts are undisputed. Louis Matte had worked as a roustabout for Ashy for almost 30 years when he injured his back at work on March 4, 1982. He was 58 years old. He saw a doctor, who diagnosed spondylolisthesis, a condition involving a congenital defect in Matte’s back. Matte did not receive long-term medical treatment, but complained of continuing back pain. Ashy paid Matte’s medical expenses, as well as compensation benefits through May 8, 1985.
On December 27, 1984, Ashy filed a “Petition for Determination of Employer’s Liability for Worker’s Compensation.” It was not disputed that Matte had had an accident, and that he is now disabled. However, based on a report from Matte’s doctor, dated May 24, 1984, Ashy concluded that Matte’s disability did not result from his accident, but rather was attributable to spondylolisthesis. Ashy intended to terminate benefits as of the date of filing, but continued to pay Matte for several more months due to an oversight.
Matte filed a reconventional demand, claiming that Ashy had terminated benefits without justification. He asked for benefits based on a total and permanent disability, and penalties and attorney’s fees.
The trial judge concluded that Matte was entitled to a presumption that the work-related injury had caused his disability since Matte stated that he had had no problems before the accident, and that Ashy had failed to rebut that presumption. He awarded Matte compensation benefits, but denied attorney’s fees and penalties.
Ashy appeals the finding of causation, in particular, the judge’s use of the presumption of causation in light of the medical testimony to the contrary. Matte also appeals, asking for penalties and attorney’s fees.
From a review of the medical testimony it is clear that the two physicians who gave expert opinions were of the opinion that plaintiffs on-the-job accident had nothing to do with his present condition of disability. Our ultimate conclusion is that the physicians were studiously confining themselves to questions of medical causation. In reading their testimony and written reports it is indeed possible to conclude, as a purely medical matter, that any aggravation of Matte’s pre-existing condition was temporary and resolved itself. The trial court was evidently not satisfied with the state of the medical evidence and asked for additional reports from the two doctors. Their reports add little.
Although neither doctor felt that Matte’s disability was in anyway related to his accident, we are of the opinion that the medical evidence problem in this case stems from the difficulty which physicians understandably have in distinguishing between medical causation and legal causation. On the basis of the facts we can not say that the trial court manifestly erred in finding legal causation. Because of the closeness of the medical question, we think that the trial court correctly denied penalties and attorney’s fees. We attach hereto a copy of the trial court’s written reasons for judgment.
*1050 The judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.
LABORDE, J., concurs, but would award penalties and attorney’s fees.
APPENDIX
CIVIL DOCKET NUMBER 84-2648-D
27TH JUDICIAL DISTRICT COURT
ST. LANDRY PARISH, LOUISIANA
REASONS FOR JUDGMENT
This is a suit for Worker’s Compensation benefits. The action was brought by the employer on December 27, 1984 against the employee under the provisions of LSA— R.S. 23:1811. The law prior to the 1982 amendment is applicable to this case.
The following facts were established by the stipulation of the parties:
a. The injury to the employee occured on March 4, 1982 while he was in the course and scope of his employment with the plaintiff.
b. The compensation rate in this case is $183.00 per week.
c. The plaintiff paid defendant $30,-378.00 in weekly benefits.
d. The total medical paid to or on behalf of the employee is $2,513.63.
e. Plaintiff terminated weekly benefit payments to the defendant on May 8, 1985.
It was further established by the testimony of the employee that he had worked for the plaintiff for about 30 years doing heavy manual (oil-field) labor. He is 62 years of age and has no education. He hurt his back in March of 1982 and hasn’t worked since. He still suffers all the time from pain in his back. He had no back problems before the accident and could perform his duties as a roustabout. Now he can’t even do his house work.
Glenn Coco who is in charge of the plaintiff’s insurance & safety program and worker’s compensation claims testified that it was his decision to terminate the benefits to the employee, and this decision was made after consultation with the company attorney. His decision was based principally on Dr. Gaar’s report of May 24, 1984 (to be discussed). When queried as to why he didn’t wait for a court determination, he stated that it was a “judgment call.”
Dr. Gaar’s report of May 24, 1984 was introduced as Matt #1. This exhibit also contains reports from Dr. Gaar dated October 17, 1983, July 27, 1982, and July 2, 1982. These reports reflect that the employee is suffering from a Grade I Spondy-lolisthesis, which is a mechanical derangement in the low back, and this is the cause of his low back pain. Dr. Gaar stated that the condition pre-exhisted the “injury”. In his report dated July 2, 1982 Dr. Gaar noted the existence of the spondylolisthe-sis, and found that the employee suffered a 20 per cent permanent physical impairment and loss of a physical function to the body because of the back condition.
Dr. Gaar’s reports further reflect that the employee refused surgery to his back, but there was no argument made nor was evidence offered which would indicate that the refusal was arbitrary.
The employee’s disability is also not disputed. This is understandably so since Dr. Gaar found that the employee could not return to his previous employment with or without surgery. This coupled with the report (Matte #2) of Deborah Grual, a certified rehabilitation counselor, who found that the vocational forecast for the employee was bleak, clearly establishes the odd-lot status.
In his letter of May 2nd, 1984 Dr. Gaar, in response to an inquiry by Mr. Coco, plaintiff's employee, stated:
“In determining his physical impairment at 20 per cent, I really don’t know how to break this down into a pre-existing defect and the strain that he sustained on March 4, 1982. I would, at this time probably feel that all of his impairment is a result of his spondylolithesis which of course, pre-exhisted. He has periodic back strains as a result of the weak *1051 back, but these apparently resolve or at least seem to reach a pre-injury level.
Again, I wish I could be more specific, but there is really no way to break it down.
♦ 4c 4c>7
The court can only speculate as to the nature of the request that promted Dr. Gaar’s response, but it is apparent to the court that Dr. Gaar could not specifically say if the injury was a continuing cause of the problem.
Dr. Louis Meuleman, an expert orthopedic surgeon, who examined the employee at plaintiffs request, was equally indecisive when he responded to the following questions:
“Q. So then, whatever it was that happened caused it (the spondylolisthesis) to become sympthomatic and because of that he is no longer able to go back to as what I read from your report, to that past profession?
A. Exactly. (Dr. Meuleman’s dep. p. 12)
4< 4c 4c 4c 4< 4c
Q. “... (We) can’t really rule out that the injury didn’t have some part and effect and that it actually caused him to become sympthomatic, can we?
A. Oh, no. No. I think that’s probably exactly what happened. (Dr. Meule-man’s dep. 15)
Dr. Meuleman also stated that if it had not been for the episode (injury) in 1982 the employee might still be working. He was only certain that the spondylolithesis would have probably manifested itself somewhere down the line regardless of the injury in 1982.
The court has been furnished with supplemental reports from Dr. Gaar and Dr. Meuleman which were secured at the court’s request. These reports do not materially alter the substance of the prior reports and testimony.
The court has already concluded that the employee is totally and permanently disabled. Thus, the sole remaining questions of disability is the causal relationship between the accidental injury to the employee’s back in March 1984 and the present disabling condition.
In his memorandum to the court counsel for the employee correctly states the applicable rule in this case. The rule is stated in Adams v. Nopsi, 418 So.2d 485 (La.1982) wherein our Supreme Court said that where there is proof of an accident and of a following disability without an intervening cause, it is presumed that the accident caused the disability. The Supreme court in the more recent case of Walton v. Normandy Village Home Association, Inc. 475 So.2d 320 (La.1985), confirmed the presumption that an accident in a worker’s compensation claim caused a disability when before an accident the worker had no disabeling symptoms from a pre-existing kidney disease, but after the accident he was unable to perform some of his work functions because of the progression of the kidney disfunction. In that case there was conflicting evidence on whether the injury accelerated or aggravated the pre-existing disease to produce the disability.
Under the facts of this case the burden shifted to the employer shortly after the injury occured in 1982; nothing in Dr. Gaar’s report of May 24, 1984 or the testimony of Dr. Meuleman shifted the burden back to the employee.
Accordingly, the court finds that the employer has failed to carry the burden of establishing that the injury in March 1982 to the employee’s back did not aggravate the pre-existing spondylolisthesis, and contribute to the present disability. The employee suffers from a total and permanent disability that was caused in part from his work with the plaintiff.
The last issue is whether the employee is entitled to attorney’s fees. LSA — R.S. 23:1201.2 (prior to its amendment of Acts 1983, Ex Sess. No. 1) provided for a penalty of 12% and a resonable attorney’s fee against employer’s who arbitrarily, capriciously or without probable cause refused to pay benefits within sixty days after written notice is not at issue in this case; only *1052 the propriety of the employer’s conduct in terminating the employee’s benefits.
Where there is a substantial question of the source of an employee’s disability, penalties and attorney’s fees should not be imposed on the employer for seeking a judicial resolution of such a factual issue that is close. Fagan v. Delta Steel & Const. Co., 449 So.2d 1143 (La.App. 3 Cir.1984); Thompson v. Natichitoches, Parish Hospital Service District, 335 So.2d 81 (La.App. 3 Cir.1976). In the instant case the resolution of the issue of causal relationship and the employee’s present disability was arrived at by a judicial interprestation of the facts. This presented a serious dispute; accordingly, penalties and attorney’s fees will not be imposed.
The employer will bear all costs of these proceedings.
Judgment will be prepared in accordance with these reasons.
Opelousas, Louisiana this 14th day of October, 1985.
/s/ Robert Brinkman
ROBERT BRINKMAN,
JUDGE DIVISION “D”